**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| EUGENE A. MAUWEE, SR., | )  3:10-cv-00250-RCJ-WGC |
| | ) |
| Plaintiff, | )  **REPORT & RECOMMENDATION** |
| | )  **OF U.S. MAGISTRATE JUDGE** |
| vs. | ) |
| | ) |
| JACK PALMER, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 50.)[1] Plaintiff has opposed the motion (Doc. # 53) and Defendants filed a reply (Doc. # 55).

After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

### I. BACKGROUND

At all relevant times, Plaintiff Eugene Mauwee was in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 28 at 1).) Plaintiff, a pro se litigant, brings

---

[1] Refers to court's docket number.

1

this action pursuant to 42 U.S.C. §1983. (*Id.*) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Correctional Officer Jonathan Ball, Associate Warden (now Warden) Robert LeGrand, (former) Warden Jack Palmer and (former) NDOC Deputy Director Don Helling. (*See* Screening Order (Doc. # 29).)

Plaintiff asserts two claims under the Due Process Clause of the Fourteenth Amendment and Free Exercise Clause of the First Amendment. (Doc. # 29.)[2] Plaintiff alleges that he is a Native American and self-described elder and spiritual leader of Native American religious activities at LCC. (Doc. # 28 at 5.) He contends that defendant Ball confiscated an eagle talon on June 19, 2007, which he contends is a sacred Native American religious artifact, that was in his possession and which he had used in many LCC religious ceremonies. (*Id.* at 4, 5.)  He then utilized NDOC's grievance system to attempt to have the talon returned to him. (*Id.* at 4.) He avers that defendants LeGrand, Palmer and Helling denied his grievances, apparently on the basis that the talon had been deemed a security threat under NDOC policy. He was later informed, on March 24, 2010, that the talon was destroyed on August 16, 2007, approximately three and a half months before Plaintiff completed the grievance process. (*Id.* at 4.) He indicates that none of the grievance responders told him about the destruction of the talon. (*Id.*) He claims he was deprived of any opportunity to arrange to send the talon home. (*Id.* at 5.) He contends that

---

[2] Plaintiff originally submitted his complaint for filing on April 28, 2010. (Doc. # 1.) The complaint was screened and dismissed with prejudice because the court found Plaintiff alleged an intentional deprivation of property and had an adequate post-deprivation remedy. (Doc. # 9.) Plaintiff appealed. (Doc. # 14.) The Ninth Circuit affirmed in part, reversed in part and remanded. (Doc. # 20.) Among other things, the Ninth Circuit found the court erred in dismissing the Fourteenth Amendment claim based on the availability of adequate state-law post-deprivation remedies because Plaintiff challenged the destruction of property under *established state procedure* (thereby indicating he was not challenging an *intentional, unauthorized deprivation* which would not state a claim if adequate post-deprivation remedies exist). (*Id.*) The Ninth Circuit also stated that Plaintiff should have been given an opportunity to amend to state a First Amendment claim under the Free Exercise Clause. (*Id.*) The amended complaint and screening followed, resulting in the current status of the claims.

destruction of the talon prior to completion of the grievance process violates his due process rights. (*Id.* at 6.) He also states that Defendants did not offer Plaintiff any other "method" of utilizing the talon in religious ceremonies at LCC. (*Id.* at 5.) He alleges that the confiscation and destruction of the talon affected his ability to practice his religion at LCC. (*Id.*)

Defendants move for summary judgment, arguing that Plaintiff's claims are barred by the applicable two-year statute of limitations. (Doc. # 50.) Defendants reason the confiscation of the talon occurred on June 19, 2007; however, even taking into account for tolling while Plaintiff completed the grievance procedure (which Plaintiff completed on November 28, 2007), Plaintiff submitted this action for filing on April 28, 2010—outside the two-year statute of limitations which would have expired on November 28, 2009. (*Id.* at 4.)

Plaintiff has opposed the motion, asserting that the Ninth Circuit has already overruled this argument. (Doc. # 53.)

In their reply, Defendants contend that neither this court nor the Ninth Circuit has addressed the issue of the timeliness of Plaintiff's action, and the fact remains that Plaintiff failed to bring this action within the applicable two-year statute of limitations. (Doc. # 55.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

3

law." *Id*. (quoting Fed.R.Civ.P. 56(c)).[1] Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250. The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary:  (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id .*  at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co.  v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.  2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

---

[1]Federal Rule of Civil Procedure 56 was amended in 2010 to state: "The court shall grant summary judgment if the movant shows that there is no genuine *dispute* as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis added.) The analysis under the cases cited, however, remains the same.

1   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

2   an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

3   party failed to make a showing sufficient to establish an element essential to that party's case on

4   which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the

5   moving party fails to meet its initial burden, summary judgment must be denied and the court

6   need not consider the nonmoving party's evidence. *See Adickes v.  S.H. Kress & Co.*, 398 U.S.

7   144, 160 (1970).

8        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

9   establish that a genuine issue of material fact exists. *See Matsushita Elec.  Indus.  Co.  v. Zenith

10  Radio Corp*., 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

11  opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

12  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

13  differing versions of the truth at trial." *T.W. Elec. Serv., Inc.  v.  Pac.  Elec.  Contractors Ass'n*,

14  809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party

15  cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported

16  by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the

17  pleadings and set forth specific facts by producing competent evidence that shows a genuine

18  issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

19       At summary judgment, a court's function is not to weigh the evidence and determine the

20  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

21  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

22  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

5

1   significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations

2   omitted).

3                                    **III. DISCUSSION**

4

5          Preliminarily, Defendants are correct that the Ninth Circuit did not address the subject of

6   whether Plaintiff's claims are barred by the applicable statute of limitations. (*See* Doc. # 20.) As

7   such, the court will turn to its analysis of this issue.

8

9   **A. Statute of Limitations for Section 1983**

10          Section 1983 does not contain its own statute of limitations; federal courts borrow the

11  statute of limitations for section 1983 claims applicable to personal injury claims in the forum

12  state. *See Wilson v. Garcia,* 471 U.S. 261, 279-80 (1985); *Johnson v. State of Cal.*, 207 F.3d 650,

13  653 (9th Cir. 2000) (citation omitted); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). In

14  Nevada, the statute of limitations for personal injury claims, and therefore § 1983 actions, is two

15  years. Nev.  Rev.  Stat. § 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir.

16  1989).

17

18          "A statute of limitations begins to run on the date on which the plaintiff's claim

19  'accrues.'" *Pouncil v. Titon*, 704 F.3d 568, 573 (9th Cir. 2012) (citation omitted). "Federal law

20  determines when a cause of action for a Section 1983 claim accrues and, hence, when the statute

21  of limitations beings to run." *Id*. (citation omitted). "Under federal law, a claim accrues when the

22  plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Johnson*,

23  207 F.3d at 653 (citation omitted).

24

25          Federal courts also apply the forum state's law regarding tolling, including equitable

26  tolling, when not inconsistent with federal law, to civil rights claims filed under section 1983.

27  *Johnson*, 207 F.3d at 653 (citations omitted). "[T]he applicable statute of limitations must be

28

1  tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d

2  926, 942-43 (9th Cir. 2005) (citations omitted).

3          The central question here is when Plaintiff knew or should have known of the injury

4  which is the basis of his claims. The court will now address that inquiry with respect to each of

5

6  Plaintiff's claims

7  **B. First Amendment Free Exercise Clause**

8          As to Plaintiff's First Amendment claim, the crux of the allegations is that once the talon

9

10  was confiscated, he was no longer allowed to use it in the performance of Native American

11  religious ceremonies at LCC. (*See* Doc. # 28 at 5.) Plaintiff specifically alleges that Defendants

12  did not offer Plaintiff any other "method" of utilizing the talon in religious ceremonies at LCC.

13  (*Id*. at 5.) He further asserts that the confiscation and destruction of the talon affected his ability

14  to practice his religion at LCC. (*Id*.) This makes sense in the context of the Free Exercise

15  Clause, which is retained by prisoners, *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

16  (1987) (citations omitted), as it prohibits prison officials from denying an inmate a reasonable

17  opportunity to pursue his faith comparable to that afforded to other religious adherents. *See*

18  *Hartmann v. California Dep't of Corrections*, 707 F.3d 1114, 1122 (9th Cir. Feb. 19, 2013)

19

20  (citation and quotation marks omitted).

21          Thus, Plaintiff knew about the injury which is the basis of his First Amendment claim—

22

23  the confiscation of the talon[3]—on June 19, 2007. (*See* Doc. # 28 at 4.) The statute of limitations

24  period was then tolled until November 28, 2007, when Plaintiff completed the grievance process.

25  Therefore, Plaintiff's First Amendment claim is barred by the two-year statute of limitations

26

27

28  _____

[3] As will be discussed *infra*, this is different from Plaintiff's Fourteenth Amendment claim, which focuses on the destruction of the talon prior to completion of the grievance process.

7

because it should have been filed on or before November 28, 2009.[4] Accordingly, the court recommends that summary judgment be granted in Defendants' favor as to Plaintiff's First Amendment claim because it is barred by the two-year statute of limitations.

**C. Fourteenth Amendment Due Process Claim**

The more difficult question is when Plaintiff knew or should have known of the injury that is the basis of his Fourteenth Amendment due process claim. This involves an analysis of what injury is actually the basis of this claim. Is it the confiscation of the claw or its ultimate destruction, which Defendants appear to concede Plaintiff did not know of until March 24, 2010? (*Id*. at 4.)

Plaintiff alleges that the talon was confiscated in June 2007. He then commenced the grievance process to try to get it back. He did not find out until March of 2010 that the talon was destroyed on August 16, 2007, over three months before he even had a chance to complete the grievance process. (Doc. # 28 at 4.) He also avers that none of the grievance responders bothered to notify him of the talon's destruction in their responses. (*Id*.)

Based on a review of Plaintiff's allegations, the crux of the Fourteenth Amendment due process claim, as opposed to the First Amendment claim, is the destruction of the talon. Plaintiff is asserting that he was deprived of his property interest in the talon when it was destroyed. He contends he was denied his due process rights because he was not afforded a meaningful opportunity to get it back or send it home because it was destroyed before he could even complete the procedural process seeking its return. Defendants do not appear to dispute that Plaintiff was not apprised of the destruction of the talon until March 24, 2010. Nor is there any other evidence before the court that would suggest Plaintiff knew or should have known of the

---

[4] While neither party addresses it, the court is assuming relation back of the amendment asserting the First Amendment claim to the filing of the original complaint.

August 16, 2007 destruction of the talon before that point. Accordingly, the court recommends that Defendants' motion for summary judgment be denied as to Plaintiff's Fourteenth Amendment due process claim.[5]

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (Doc. 50) as follows:

(1) Defendants' Motion for Summary Judgment should be **GRANTED** as to Plaintiff's First Amendment claim; and

(2) Defendants' Motion for Summary Judgment should be **DENIED** as to Plaintiff's Fourteenth Amendment due process claim.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///

///

///

///

---

[5] To the extent Plaintiff's complaint can be construed as alleging a due process claim based on just the *confiscation* of the talon, such a claim would be barred by the statute of limitations.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED:  December 19, 2013.

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**